IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

E.S.Y., INC. d/b/a LIQUID
ENERGY, and YARIV
SHAKED,

      Plaintiffs

vs.                                                            CASE NO.: 1:15-cv-21349-CMA

SCOTTSDALE INSURANCE
COMPANY,

      Defendant.

_____/

**PLAINTIFFS' AMENDED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT INCORPORATING MEMORANDUM OF LAW IN
SUPPORT THEREOF
&
PLAINTIFFS' AMENDED CROSS MOTION FOR SUMMARY JUDGMENT**

Comes Now Plaintiffs, E.S.Y. Inc., d/b/a Liquid Energy and Yariv Shaked ("ESY"), by

and through their undersigned counsel and hereby file this their Amended Response in Opposition

to Defendant's Motion for Summary Judgment. Plaintiffs' Response incorporates a Memorandum

of Law in Support of thereof.

In addition, since the issues raised in the Defendant's Motion for Summary Judgment are

the same as the issues raised in Plaintiffs' Complaint for Declaratory Relief, the Plaintiffs also

move for Summary Judgment on the issues of SCOTTSDALE INSURANCE COMPANY'S duty

to defend the Plaintiffs in the underlying litigation as well as its duty to indemnify them.

It is Plaintiff's position that the EXIST FEDERAL LAWSUIT clearly alleged an

advertising injury giving rise to a duty on the part of SCOTTSDALE INSURANCE COMPANY

to defend and indemnify the Plaintiffs herein.  As such, the Defendants Motion should be denied

and Plaintiff's Cross Motion for Summary Judgment should be granted.

## I.    INTRODUCTION

### A.    Undisputed Facts

In or around February 2015, Exist, Inc., filed its Second Amended Complaint in the United States District Court for the Southern District of Florida, bearing Civil Action No.: 14-CV-62429 against the Plaintiffs herein (hereinafter the underlying "EXIST FEDERAL LAWSUIT").

The EXIST FEDERAL LAWSUIT asserted seven (7) separate causes of action against the Plaintiffs herein for Copyright Infringement (Counts I and II), Federal Unfair Competition under the Lanham Act (Count III), Federal False Designation of Origin under the Lanham Act (Count IV), Federal Trademark Infringement (Count V), Florida Trademark Infringement (Count VI), and Florida Unfair Competition under Florida Common Law (Count VII). A copy of the EXIST FEDERAL LAWSUIT is attached hereto as Exhibit "A".

In EXIST'S FEDERAL LAWSUIT it alleged that EXIST was a maker of custom apparel that it advertised, marketed, and sold its products throughout the United States using EXIST'S trademarks and copyrighted designs, which included EXIST'S Federal and Florida trademarks as well as "Shield Marks". (See, paragraphs 16, and 17-20 and 30 of EXIST'S FEDERAL LAWSUIT).

EXIST'S FEDERAL LAWSUIT also alleged that the Plaintiffs herein were also in the business of manufacturing, marketing and selling apparel products. (See, paragraphs 3, 6, 13, 21, and 31-33 of EXIST'S FEDERAL LAWSUIT). Furthermore, EXIST alleged that the Plaintiffs herein adopted and utilized a substantially similar "Shield Mark" on its apparel and hang tags, that they then used to *advertise*, *market, distribute* and *sell* its infringing products throughout Florida. (See, paragraphs 3, 6, 13, 21, and 31-33 of EXIST'S FEDERAL LAWSUIT).

EXIST'S FEDERAL LAWSUIT also alleged that the Plaintiffs herein use of EXIST'S trademarks in their advertising and marketing of their products was a misappropriation, an infringement of their trademarks and copyrights and "Shield Marks" and caused confusion among EXIST'S customers.  (See, paragraphs 23-27, 40, 41, 47, 53, 54, 58, 59, 61, 65, 66, 73, 79, 80 and 82 of EXIST'S FEDERAL LAWSUIT).  EXIST further alleged Plaintiffs diluted the value of their trademarks and copyright and caused EXIST damage to its name, reputation and goodwill for which they sought damages as well as injunctive relief to prevent the continued infringement by the Plaintiffs in connection with their sale, advertising and marketing. (See, paragraphs 23-27, 40, 41, 47, 53, 54, 58, 59, 61, 65, 66, 73, 79, 80 and 82 of EXIST'S FEDERAL LAWSUIT).

In the Prayer for Relief in the EXIST FEDERAL LAWSUIT, EXIST specifically requests that the Plaintiff's herein be enjoined from *publishing, marketing or advertising* or using EXIST's Shield Marks and to deliver all *advertisements* that bear EXIST'S Shield Mark. (See paragraph 1.a. v and vi of EXIST'S FEDERAL LAWSUIT).

It should be noted that paragraphs 3, 65 and paragraph 1.a. v and vi of the Prayer for Relief, EXIST specifically use the words "advertising" and "marketing" and alleged EXIST suffered injury and damages from the Plaintiff's herein infringement of EXIST'S federal marks for which it sought both damages and injunctive relief.

At the time EXIST filed its FEDERAL LAWSUIT against the Plaintiffs herein, the Plaintiffs were insured under a Policy of Insurance issued by the Defendant, Scottsdale Insurance Company ("SCOTTSDALE INSURANCE") issued to E.S.Y. INC., d/b/a LIQUID ENERGY and YARIV SHAKED ("ESY") bearing Policy Number CPS 1969244 (the "Policy"). The Policy provided coverage for commercial property, commercial general liability, commercial crime, and miscellaneous business auto. The Policy also provided coverage for "personal and advertising

injury" and was in full force and effect between May 8, 2014, and May 8, 2015. (A copy of the Policy is attached hereto as Exhibit "B").

By letter dated November 26, 2014, the Defendant, SCOTTSDALE INSURANCE, through their counsel, informed the Plaintiffs' herein that SCOTTSDALE INSURANCE was denying its duty to defend and refusing to indemnify the Plaintiff herein for the claims made in the EXIST FEDERAL LAWSUIT.  Specifically, SCOTTSDALE INSURANCE took the position that the claims asserted by EXIST did not constitute a "personal and advertising injury" so as to trigger coverage or a duty to defend under the policy.  SCOTTSDALE INSURANCE claimed that the only offenses coming within the definition of "personal and advertising injury" are infringement of trade dress or slogan in the insured advertisement and that such damages were not pled in the litigation.  Further, SCOTTSDALE INSURANCE took the position that even if such offenses did occur, they must have began before the coverage under the policy started and therefore coverage would not be owed even if some of the acts occurred during the policy period.  Finally, SCOTTSDALE INSURANCE took the position that even if coverage was triggered under the policy, all coverage would nevertheless be barred by the "knowing violation" and "infringement of trademark" exclusions in the policy.  (A copy of the Letter dated November 26, 2015 is attached hereto as Exhibit "C").

After the filing original complaint, EXIST amended its complaint. As a result, by letter dated January 29, 2015, the Defendant, SCOTTSDALE INSURANCE, reaffirmed their previous denial of coverage and a duty to defend. (A copy of SCOTTSDALE INSURANCE'S letters denying coverage and denying its duty to defend are attached hereto as Exhibit "D").

Subsequently, the Plaintiffs herein settled EXIST'S FEDERAL LAWSUIT, but not before the Plaintiffs herein incurred substantial attorney's fees and litigation-related costs.

**B.      Policy Terms**

The Policy issued to the Plaintiffs herein by SCOTTSDALE INSURANCE provides coverage to for claims, among many others, asserting "personal and advertising injury". Within the Commercial General Liability Form of the Policy is a provision for coverage of "Personal and Advertising Injury Liability." *See* Coverage B. The "Insuring Agreement" within the coverage provisions of the Policy, provides, in pertinent part:

### COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

#### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "*personal and advertising injury*" to which this insurance applies. We will have the right and *duty to defend* the insured against any "suit" seeking those damages ... (emphasis added).

It is clear from the above provision that SCOTTSDALE INSURANCE is required to both defend and indemnify the Plaintiffs herein from all claims for damages arising out of "personal and advertising injury." In order to more fully understand this language one needs to review the definitional section of the Policy. Section V contains the definitions to be employed in interpreting the Policy. "Personal and advertising injury" is defined, in pertinent part, as follows:

#### SECTION V--DEFINITIONS

14. "*Personal and advertising injury*" *means* injury, including consequential "bodily injury", arising out of *one or more of the following offenses:*

a.        False arrest, detention or imprisonment;

b.        Malicious prosecution or abuse of process;

c.        The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by

or on behalf of its owner, landlord or lessor;

d.   *Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services*;

e.   Oral or written publication of material that violates a person's right of privacy;

f.   *The use of another's advertising idea in your "advertisement"*; or

g.   *Infringing upon another's copyright, trade dress or slogan in your "advertisement".* (emphasis added).

The word "Advertisement" is defined in Section V of the Policy as follows:

1.   "Advertisement" means *a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.*  For the purposes of this definition:

   a.   Notices that are published include material placed on the internet or on similar electronic means of communication; and

   b.   Regarding web sites, only that part of a web site that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

SCOTTSDALE INSURANCE determined in their letter denying coverage that the underlying Complaint did not seek damages because of "personal or advertising injury" as defined above.

The Plaintiffs herein strongly disagree with SCOTTSDALE INSURANCE'S conclusion and maintain that a "personal and advertising injury" was alleged in EXIST'S underlying FEDERAL LAWSUIT, such that the Plaintiffs herein were entitled to both a defense and coverage for the claims asserted against them therein.

In addition, the Defendant has attempted to persuade this Court that even if the acts complained of constitute a "personal and advertising injury" under the Policy, that coverage would have been excluded under one or more of the exclusions from coverage contained in the Policy. The Policy exclusions are contained in Section B.2.

The first exclusion that the Defendant argues is applicable is the "Infringement of Copyright, Patent, Trademark or Trade Secret" which provides that this insurance does not apply to:

> i.   Infringement of Copyright, Patent, Trademark or Trade Secret
>
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
>
> *However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan.*

Thus, the exclusion is only applicable to the improper use of the copyright or trademark itself in connection with the infringing products themselves. However, when the infringement is in connection with the advertising, the exclusion is not applicable.  A review of EXIST'S underlying FEDERAL LAWSUIT clearly reveals that both type of injuries are alleged: i.e. injury and damage from the improper use of the protected marks as well as in advertising and marketing. As such the exclusion is inapplicable.

The second exclusion that the Defendant argues is applicable is the "Knowing Violation of Rights of Another which provides that this insurance does not apply to:

> a. Knowing Violation of Rights of Another
>
> "Personal and Advertising injury" caused by or at the direction of the insured *with the knowledge that the act would violate the rights of another **and** would inflict "personal and advertising injury."*

Pursuant to the terms of the above exclusion, this provision will only apply to exclude coverage where a "personal and advertising injury," as defined above, was caused by or at the direction of the insured: (1) with knowledge that the act would violate the rights of another; **and** (2) with knowledge that the act would inflict "personal and advertising injury."

A review of the allegations contained in EXIST'S underlying FEDERAL LAWSUIT clearly reveals that EXIST does not allege the elements necessary to trigger this exclusion. At most, what EXIST alleges in general and conclusory terms is that the Plaintiffs violation and use of EXIST'S protected marks was "intentional", but not that the Plaintiffs' herein did this intentionally to cause "personal and advertising injury."   In addition, the EXIST underlying FEDERAL LAWSUIT alleges both intentional and unintentional conduct.  Therefore, even if the intentional conduct was excluded, the unintentional conduct would be covered thereby providing an independent basis for SCOTTSDALE's duty to indemnify and defend.  As such the exclusion is inapplicable.

## II.   IT IS CLEAR FROM THE ALLEGATIONS ON THE FACE OF EXIST'S COMPLAINT THAT SCOTTSDALE INSURANCE HAD A DUTY TO DEFEND AND/OR INDEMNIFY THE PLAINITFFS HEREIN

### A.   All doubt regarding the duty to defend and/or indemnify must be resolved in favor of the insured.

It is well-established that any doubt concerning an insurer's duty to defend and/or provide coverage must be resolved in favor of the insured. *Auto-Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 34 (Fla. 2000) (ambiguous policy provisions interpreted liberally in favor of the insured); *Grissom v. Commercial Union Ins. Co.,* 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992)("all doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured."); *Bear Wolf, Inc. v. Hartford Ins. Co.,* 819 So. 2d 818, 820 (Fla. 4th DCA 2002)("If the allegations of the complaint leave any doubt regarding the duty to defend, the insurer

is required to defend."); *Lime Tree Village Cmty Club Ass'n v. State Farm Gen. Ins. Co.,* 980 F. 2d 1402, 1405 (11th Cir. 1993). If the complaint, fairly read, alleges facts which create potential coverage under the policy, the insured must defend the suit. *Morgan Internat'l Realty, Inc. v. Dade Underwriters Ins. Agency,* 617 So. 2d 455 (Fla. 3d DCA 1993); *Biltmore Constr. Co. v. Owners Ins. Co.,* 842 So. 2d 947, 949 (Fla. 2d DCA 2003); *Bear Wolf, Inc.,* 819 So. 2d at 820; *Lime Tree Village,* 980 F. 2d at 1405.

Further, the duty to defend is broader than, and distinct from, the duty to indemnify. The insurer must defend even if the facts alleged are actually untrue, the legal theories unsound, or it is eventually determined that no coverage actually exists for the claim as proven. *See West Am. Ins. Co. v. Silverman*, 378 So. 2d 28, 30 (Fla. 4th DCA 1979); *Psychiatric Assoc. v. St. Paul Fire & Marine Ins. Co.*, 647 So. 2d 134 (Fla. 1st DCA 1994).

Where the insurer fails to defend pursuant to the terms of the policy, the insured is entitled to recovery of reasonable attorneys' fees incurred in defense of the claim. *See Cont'l Cas. Co. v. City of S. Daytona*, 807 So. 2d 91, 93 (Fla. 5th DCA 2002).

**B.      SCOTTSDALE INSURANCE has a duty to defend and indemnify under the definition of "advertising and personal injury" contained in Section B.1.a of the Policy.**

It is clear that a duty to defend arose from the coverage provisions of the Policy as quoted above. Specifically, the Policy expressly provides that Plaintiffs herein were entitled to coverage for "advertising or personal injury." See B.1.a.

The Policy then goes on to include in paragraph 14, under the definition of "advertising or personal injury":

> d.      *Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services*;

       f.    *The use of another's advertising idea in your "advertisement"*; or

       g.    *Infringing upon another's copyright, trade dress or slogan in your "advertisement".* (emphasis added).

The underlying Complaint clearly sought damages for infringement of EXIST'S protected marks by the Plaintiffs herein by using EXIST's protected marks on the offending products themselves, but also in connection with their advertising and marketing of the offending products. EXIST alleged that the Plaintiffs unauthorized use of their protected marks constituted unfair competition, caused confusion among their customers as to the origin of the offending products, as well as disparaged their products and diluted the value of their protected marks.

EXIST also alleged that the Plaintiffs' herein infringed their protected marks through the use of hang tags attached to the offending products. Hang tags are a form of printed advertisement. Hang tags are printed tags separate from the product itself, which are attached to the product. They contained the protected marks and are used to advertise, market and promote the product and the company.

Notwithstanding the forgoing, as previously stated, SCOTTSDALE INSURANCE denied both their duty to defend and indemnify, asserting that EXIST FEDERAL LAWSUIT did not allege any infringement of trade dress or slogan that would trigger coverage under the "personal and advertising injury" provision of the policy.

EXIST'S underlying Complaint, fairly read, clearly alleged infringing activities in an "advertisement" as defined in the Policy. See, *Morgan Internat'l Realty, Inc.,* 617 So. 2d at 455; *Biltmore Constr. Co.,* 842 So. 2d at 949; *Bear Wolf, Inc.,* 819 So. 2d at 820; and *Lime Tree Village,* 980 F. 2d at 1405.

Further, any doubts concerning coverage must be resolved in favor of the Plaintiffs herein.

*See Auto-Owners Ins. Co.*, 756 So. 2d at 34, *Grissom,* 610 So. 2d at 1307 (Fla. 1st DCA 1992)

*Bear Wolf, Inc.*, 819 So. 2d at 820.

Indeed, it is difficult to fathom how the Plaintiffs herein could "advertise" or "market" their products except through some sort of "advertisement" as defined in the Policy. In fact, as part of their prayer for relief, EXIST specifically requested that the Plaintiffs herein be prevented from using EXIST'S protected marks in connection with any "*advertising",* and *"marketing".*

C.   ***SCOTTSDALE INSURANCE has a duty to defend and indemnify under the definition of "advertising and personal injury" contained in Section 14.d of the Policy.***

In addition to being entitled to a defense and coverage under Section B.1. of the Policy, the Plaintiffs herein were also entitled to a defense and to be indemnified pursuant to the definition of "advertising or personal injury" contained in Section 14.d. This section provided coverage for any "oral or written publication of material that slanders or libels a person or organization or *disparages* a person's or organizations' goods, products or services."

Once again, a fair reading of EXIST'S underlying Complaint clearly alleged that the Plaintiffs herein use of EXIST's protected marks and "Shield Marks" in connection with the advertising and marketing of their products was not only an infringement, but also constituted unfair competition and created confusion among their customers as to the origin of the offending goods and diluted the good will, reputation and value of their protected marks as well as disparaged their products and marks.

EXIST sought both monetary damages as well as injunctive relief in their underlying FEDERAL COMPLAINT. Clearly, these allegations fall within the coverage provisions of the Policy even though the terms "slander," "libel" and "disparage" are not defined in the Policy.

In analyzing policy provisions, the terms of the contract must be given their everyday meaning and be read in light of the skill and experience of an ordinary person. *Lindheimer*, 643 So. 2d 636 (Fla. 3d DCA 1994). In *Hyman v. Nationwide Mutual Fire Insurance Co.,* 304 F. 3d 1179 at 1990 (11th Cir. 2002), the Court stated the well-established principle of insurance policy construction under Florida law:

> [S]tart with the basic premise that terms of an insurance contract must be given their plain, ordinary and generally accepted meanings viewed from the perspective of the average person, with insuring language given its broadest possible sweep and exclusionary language the narrowest possible reach.

Therefore, in determining the meaning of the aforementioned terms, the court should give such terms their plain and everyday meaning. *Id*. Several courts have recognized the definition of "disparage" as meaning to lower in rank or reputation, and /or to depreciate by indirect means. *See St. Paul Guardian Ins. Co v. Recognition Internat'l, Inc.*, 2001 U.S. Dist. LEXIS 1085 (N.D. Tex. 2001); *Logan v. San Francisco Fed. Sav. & Loan Assoc*, 1998 U.S. Dist. LEXIS 10517 (N.D. Cal. 1998); *State Farm Fire & Cas. Co. v. Martinez*, 26 Kan. App. 2d 869, 875 (Kan. App. 2000).

Once again, we must bear in mind that SCOTTSDALE INSURANCE was required to defend the underlying suit if the allegations raised any doubt as to the duty to defend. *Bear Wolf, Inc.*, 819 So. 2d at 820. Here there is no doubt. Clearly, "dilution" and/or "irreparable injury" to the "goodwill and *reputation*" of EXIST come within the definition of "disparage" which is "to lower in rank or *reputation*." Since the allegations of EXIST'S underlying Complaint clearly allege disparagement to EXIST'S goods and services, SCOTTSDALE INSURANCE was required to defend and indemnify. Therefore, the Plaintiffs herein are entitled to seek recovery of the costs of defending the underlying suit. *See Cont'l Cas. Co.*, 807 So. 2d at 93.

**D.      SCOTTSDALE INSURANCE has a duty to defend and indemnify under the definition of "advertising and personal injury" contained in Section 14.g of the Policy.**

In *Poof Toy Prods, Inc. v. U.S. Fidelity & Guaranty Co.,* 891 F. Supp. 1228, 1235-36 (E.D. Mich. 1995), a case concerning trademark and trade dress infringement, the court held that although the complaint did not on its face appear to allege any advertising activities, the complaint was "replete with the term 'marketing.'" The court concluded that the term "marketing" includes advertising activities. *Id.* The court also recognized that "allegations of trademark and trade dress infringement inherently involve advertising activity." *Id.; see also, Winklevoss Consultants, Inc. v. Fed Ins. Co.,* 991 F. Supp. 1024, 1036 (N.D. Ill. 1998) (citing several cases reaching the same result); *Finger Furn. Co., Inc.,* 2002 WL 32113755 (recognizing that distinguishing between marketing and advertising is not reasonable and that "one of the basic functions of a trademark is to *advertise* the product or services of the registrant"). Specifically, the court stated:

> [T]here can be no trademark/trade dress infringement without advertising having occurred. This conclusion results from a required element in every trademark/trade dress case, that the mark or dress is likely to cause confusion to the consumer or deceive the consumer as to the origin or manufacturer of the goods. To have (or potentially cause) this effect, one must clearly advertise (announce to the intended customers) the mark or dress.

*Id.* at 1236.

Here, like in *Poof Toy,* EXIST'S underlying Complaint specifically refers to marketing, promoting, displaying, selling and also alleges trademark and/or trade dress infringement. EXIST'S underlying Complaint goes well beyond that deemed sufficient in *Poof Toy* by specifically requesting that "advertising" by the Plaintiffs herein be enjoined.

The allegations of the underlying complaint trigger coverage under the definition of "advertising or personal injury" contained in Section 14.g of the Policy-"infringing upon another's copyright, trade dress or slogan in your 'advertisement'." While the EXIST underlying complaint does not use the term "trade dress", it does allege an action for "Federal unfair competition under

Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)." As noted by the 11th Circuit in *Hyman v. Nationwide Mutual Fire Insurance Co.,* 304 F. 3d 1179 (11th Cir. 2002), violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) creates a federal cause of action for trade dress infringement.

In the context of infringement there is "probably no substantive difference between" trademark and trade dress. *El-Com Hardware, Inc., v. Fireman's Fund Ins.,* 92 Cal App. 4th 205, 214 (Cal. 1st App. Dist. 2001); *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.,* 781 F. 2d 604, 608 (7th Cir. 1985); *Aloha Pacific, Inc. v. Cal. Ins. Guar. Assoc.,* 79 Cal. App. 4th 292, 321 (Cal. App. 2d 2000). Regardless of the label placed on a cause of action brought under §43(a), the central concern is "whether the public is likely to be confused as to the manufacturer, attributes, or origin of the product." *Hyman,* 304 F. 3d at 1187, n.6. In *Hyman,* the plaintiff sought indemnity for a judgment rendered against it for unfair competition in violation of § 43(a) of the Lanham Act. 304 F. 3d at 1186. The Eleventh Circuit, applying Florida law, stated:

> We note that, because it is based on Double R's use of model numbers confusingly similar to Inter-Global's distinctive model numbers to designate its products, the Lanham Act claim fairly could be described as either "trade dress infringement" or "false designation of origin." *Id* at 1186, n.6.

Similarly, in the present case, EXIST'S underlying complaint alleges that the Plaintiffs herein infringement of EXIST'S protected marks and "Shield Marks" caused confusion as to source or sponsorship" thus constituting unfair competition under § 43(a).

Following *Hyman,* the Lanham Act claim fairly could be described as trade dress infringement. Therefore, SCOTTSDALE INSURANCE was obligated to defend and indemnify. See, *Lime Tree,* 980 F. 2d at 1405; *Bear Wolf, Inc.,* 819 So. 2d at 820. The declination letter

recognized as much wherein it states "[t]he complaint does allege trademark infringement. This may qualify as 'personal and advertising injury.'"

> **E.      SCOTTSDALE INSURANCE has a duty to defend and indemnify under the definition of "advertising and personal injury" contained in Section 14.f of the Policy.**

The allegations of EXIST'S underlying complaint also trigger coverage under subsection 14.f of the Policy "the use of another's advertising idea in your 'advertisement.' " As recognized in *Hyman,* an "advertising idea" is "any idea or concept related to the promotion of a product to the public." 304 F. 3d at 1188. A product's trade dress and/or trademark, including the packaging or labeling of goods and marketing techniques, can constitute an "advertising idea." *Id.* at 1189 (quoting *Adolfo House,* 165 F. Supp. 2d at 1339, for the proposition that "[O]ne reasonable interpretation of 'advertising ideas' and 'style of doing business' concepts...is that they encompass the physical appearance of a product-the ornamental features that distinguish it from similar products and identify its source.

Because trademark and trade dress serve this function, the concept of advertising idea or 'style of doing business' may reasonably be interpreted to include these types of claims. The crux of EXIST'S underlying complaint was that the Plaintiffs' herein use of the EXIST'S protected marks and "Shield Marks" together with their use of the hang tags incorporating these protected marks was causing confusion to EXIST'S customers.

Clearly SCOTTSDALE INSURANCE had a duty and an obligation to defend and indemnify under this provision, thus triggering coverage. *Bear Wolf, Inc.,* 819 So. 2dat 820; *Lime Tree Village,* 980 F. 2d at 1405 (11th Cir. 1993).

### G.     The exclusions in the Policy are inapplicable.

At the outset it must be noted that Exclusions in insurance policies are narrowly construed and are construed even more strictly against the insurer than coverage clauses. *Hyman,* 304 F. 3d at 1190; *State Comprehensive Health Ass'n v. Carmichael,* 706 So. 2d 319, 320 (Fla. 4th DCA1997).

With this in mind, SCOTTSDALE INSURANCE takes the position that assuming that this Court determined that it had a duty to defend and indemnify the Plaintiffs herein under the coverage provisions of the Policy, that such coverage was then excluded under two different exclusions in the Policy.

The first exclusion that the Defendant argues is applicable is the "Infringement of Copyright, Patent, Trademark or Trade Secret" which provides that this insurance does not apply to:

> i.   Infringement of Copyright, Patent, Trademark or Trade Secret
>
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
>
> *However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan.*

Thus, the exclusion is only applicable to the improper use of the copyright or trademark itself in connection with the infringing products themselves. When the infringement occurs in connection with the advertising, the exclusion is not applicable.

A review of EXIST'S underlying FEDERAL LAWSUIT clearly reveals that both type of injuries are alleged: i.e. injury and damage from the improper use of the protected marks as well as in advertising and marketing. As such this exclusion is inapplicable.

The second exclusion that the Defendant argues is applicable is the "Knowing Violation of Rights of Another which provides that this insurance does not apply to:

> a. Knowing Violation of Rights of Another
>
> "Personal and Advertising injury" caused by or at the direction of the insured *with the knowledge that the act would violate the rights of another* **and** *would inflict "personal and advertising injury."*

Pursuant to the terms of the above exclusion, this provision will only apply to exclude coverage where a "personal and advertising injury," as defined above, was caused by or at the direction of the insured: (1) with knowledge that the act would violate the rights of another; **and** (2) with knowledge that the act would inflict "personal and advertising injury."

A review of the allegations contained in EXIST'S underlying FEDERAL LAWSUIT clearly reveals that EXIST does not allege the elements necessary to trigger this exclusion. At most, what EXIST alleges in general and conclusory terms is that the Plaintiffs violation and use of EXIST'S protected marks was "intentional", but not that the Plaintiffs' herein did this intentionally to cause "personal and advertising injury." As such the exclusion is inapplicable.

The duty to defend turns on the "grounds for liability" expressed by the "allegations of fact" in the underlying complaint. *Lime Tree,* 980 F. 2d at 1405. In *Lime Tree,* the court held that an exclusion for intentional acts was not applicable despite allegations throughout the complaint that the insured acted intentionally and where every count incorporated by reference the allegedly intentional acts. 980 F. 2d at 1405 (applying Florida law). The court concluded that despite the allegations of intentional conduct, the insured could also be held liable for unintentional conduct under the allegations of the complaint. *Id.* Because the factual allegations provided a potential basis for coverage, the insurer was required to defend. *Id.* at 1406.

### III.      CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment should be denied and Plaintiff's Cross Motion for Summary Judgment should be granted as to both SCOTTSDALE INSURANCE COMPANY'S duty to defend and indemnify the Plaintiffs herein.

                         Respectfully Submitted,

                         SHAKED LAW FIRM, P.A.

                           /s/ Sagi Shaked
                         Sagi Shaked, Esq.
                         Florida Bar No.: 0195863
                         19950 West Country Club Drive, Suite 100
                         Miami, FL 33180
                         Telephone No.: (305) 937-0191
                         Facsimile No.: (305) 937-0193
                         Primary Email: filingcourtdocuments@gmail.com
                         Secondary Email: shakedeservice@gmail.com
                         Attorney for Plaintiffs, ESY INC & YARIV SHAKED

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on September 1, 2015 a copy of the foregoing was filed using the Court's CM/ECF system, which will send a copy of the foregoing to the following receipts:

        Kathy J. Maus, Esq. and Julius F. Parker, Esq.
        Butler Pappas Weihmuller Katz Craig, LLP
        3600 Maclay Blvd., Suite 101
        Tallahassee, FL 32312
        Telephone No.: (850) 894-4111
        Facsimile No.: (850) 894-4999
        Attorneys for Defendant, Scottsdale Insurance Company


                         SHAKED LAW FIRM, P.A.

                           /s/ Sagi Shaked
                         Sagi Shaked, Esq.
                         Florida Bar No.: 0195863
                         19950 West Country Club Drive, Suite 100
                         Miami, FL 33180