IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

E.S.Y., INC. d/b/a LIQUID
ENERGY, and YARIV
SHAKED,

    Plaintiffs

vs.                                                   CASE NO.: 1:15-cv-21349-CMA

SCOTTSDALE INSURANCE
COMPANY,

    Defendant.

_____/

**PLAINTIFFS' SECOND AMENDED RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND**
**PLAINTIFFS' SECOND AMENDED CROSS MOTION FOR SUMMARY JUDGMENT**

      COMES NOW the Plaintiffs, E.S.Y. INC., D/B/A LIQUID ENERGY AND YARIV SHAKED ("ESY" and/or Plaintiffs herein"), by and through their undersigned counsel, pursuant to Southern District Local Rule 56, and hereby files this their Second Amended Response in Opposition to Defendant's Motion for Summary Judgment. Plaintiffs also move for Summary Judgment on their claims.  In support thereof, Plaintiffs would show as follows:

1. There are no disputed issues of material fact.

2. Based upon the undisputed facts, the Defendant's Motion for Summary Judgment must be denied.

3. As a matter of law, the Defendant had a duty to defend and/or indemnify the Plaintiffs' herein for the claims asserted by EXIST against them in its underlying FEDERAL LAWSUIT.

4. Based upon the same undisputed facts, the Plaintiffs are entitled to Summary Judgement in their favor as a matter of law.

## UNDISPUTED FACTS

In Compliance with Rule 56.1, Southern District Local Rules, Plaintiffs have filed concurrently herewith a Statement of Undisputed Facts.

## MEMORANDUM OF LAW

It is Plaintiffs' position that the claims asserted by EXIST in its underlying FEDERAL LAWSUIT against the Plaintiffs herein clearly alleged an "advertising injury" giving rise to a duty on the part of SCOTTSDALE INSURANCE COMPANY to defend and/or indemnify the Plaintiffs herein. As such, the Defendant's Motion for Summary Judgment should be denied and Plaintiffs' Cross Motion for Summary Judgment should be granted.

**I.     IT IS CLEAR FROM THE ALLEGATIONS ON THE FACE OF EXIST'S COMPLAINT THAT SCOTTSDALE INSURANCE HAD A DUTY TO DEFEND AND/OR INDEMNIFY THE PLAINITFFS HEREIN**

**A.     All doubt regarding the duty to defend and/or indemnify must be resolved in favor of the insured.**

It is well-established that any doubt concerning an insurer's duty to defend and/or provide coverage must be resolved in favor of the insured. *Auto-Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 34 (Fla. 2000) (ambiguous policy provisions interpreted liberally in favor of the insured); *Grissom v. Commercial Union Ins. Co.,* 610 So. 2d 1299, 1307 (Fla. 1st DCA 1992)("all doubts as to whether a duty to defend exists in a particular case must be resolved against the insurer and in favor of the insured."); *Bear Wolf, Inc. v. Hartford Ins. Co.,* 819 So. 2d 818, 820 (Fla. 4th DCA 2002)("If the allegations of the complaint leave any doubt regarding the duty to defend, the insurer is required to defend."); *Lime Tree Village Cmty Club Ass'n v. State Farm Gen. Ins. Co.,*

980 F. 2d 1402, 1405 (11th Cir. 1993). If the complaint, fairly read, alleges facts which create potential coverage under the policy, the insured must defend the suit. *Morgan Internat'l Realty, Inc. v. Dade Underwriters Ins. Agency,* 617 So. 2d 455 (Fla. 3d DCA 1993); *Biltmore Constr. Co. v. Owners Ins. Co.,* 842 So. 2d 947, 949 (Fla. 2d DCA 2003); *Bear Wolf, Inc.,* 819 So. 2d at 820; *Lime Tree Village,* 980 F. 2d at 1405.

Further, the duty to defend is broader than, and distinct from, the duty to indemnify. The insurer must defend even if the facts alleged are actually untrue, the legal theories unsound, or it is eventually determined that no coverage actually exists for the claim as proven. '*See West Am. Ins. Co. v. Silverman*, 378 So. 2d 28, 30 (Fla. 4th DCA 1979); *Psychiatric Assoc. v. St. Paul Fire & Marine Ins. Co.*, 647 So. 2d 134 (Fla. 1st DCA 1994).

Where the insurer fails to defend pursuant to the terms of the policy, the insured is entitled to recovery of reasonable attorneys' fees incurred in defense of the claim. *See Cont'l Cas. Co. v. City of S. Daytona*, 807 So. 2d 91, 93 (Fla. 5th DCA 2002).

**B.** ***SCOTTSDALE INSURANCE has a duty to defend and indemnify under the definition of "advertising and personal injury" contained in Section B.1.a of the Policy.***

It is clear that a duty to defend arose from the coverage provisions of the Policy as quoted in the Statement of Undisputed Facts. Specifically, the Policy expressly provides that Plaintiffs herein were entitled to coverage for "advertising or personal injury." See B.1.a.

The Policy then goes on to include in paragraph 14, under the definition of "advertising or personal injury":

> d.  *Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services*;
>
> f.  *The use of another's advertising idea in your "advertisement"*; or

    g. *Infringing upon another's copyright, trade dress or slogan in your "advertisement".* (emphasis added).

  The EXIST FEDERAL LAWSUIT clearly sought damages for infringement of EXIST'S protected marks by the Plaintiffs herein by using EXIST's protected marks on the offending products themselves, but also in connection with their advertising and marketing of the offending products. EXIST alleged that the Plaintiffs unauthorized use of their protected marks constituted unfair competition, caused confusion among their customers as to the origin of the offending products, as well as disparaged their products and diluted the value of their protected marks.

  EXIST also alleged that the Plaintiffs' herein infringed their protected marks through the use of hang tags attached to the offending products. Hang tags are a form of printed advertisement. Hang tags are printed tags *separate from the product itself*, which are attached to the product. They contained the protected marks and are used to advertise, market and promote the product and the company.

  Notwithstanding the forgoing, as previously stated, SCOTTSDALE INSURANCE denied both their duty to defend and indemnify, asserting that EXIST FEDERAL LAWSUIT did not allege any infringement that would trigger coverage under the "personal and advertising injury" provision of the policy.

  EXIST'S underlying Complaint, fairly read, clearly alleged infringing activities in an "advertisement" as defined in the Policy. See, *Morgan Internat'l Realty, Inc.,* 617 So. 2d at 455; *Biltmore Constr. Co.,* 842 So. 2d at 949; *Bear Wolf, Inc.,* 819 So. 2d at 820; and *Lime Tree Village,* 980 F. 2d at 1405.

Further, any doubts concerning coverage must be resolved in favor of the Plaintiffs herein. *See Auto-Owners Ins. Co.*, 756 So. 2d at 34, *Grissom,* 610 So. 2d at 1307 (Fla. 1st DCA 1992) *Bear Wolf, Inc.*, 819 So. 2d at 820.

Indeed, it is difficult to fathom how the Plaintiffs herein could "advertise" or "market" their products except through some sort of "advertisement" as defined in the Policy. In fact, as part of their prayer for relief, EXIST specifically requested that the Plaintiffs herein be prevented from using EXIST'S protected marks in connection with any "*advertising*", and *"marketing"*.

    **C.**    *SCOTTSDALE INSURANCE has a duty to defend and indemnify under the definition of "advertising and personal injury" contained in Section 14.d of the Policy.*

In addition to being entitled to a defense and coverage under Section B.1. of the Policy, the Plaintiffs herein were also entitled to a defense and to be indemnified pursuant to the definition of "advertising or personal injury" contained in Section 14.d. SCOTTSDALE INSURANCE dismisses the notion and does not even address the possibility that coverage could also be implicated under subparagraph d. This section provided coverage for any "oral or written publication of material that *slanders or libels* a person or organization or *disparages* a person's or organizations' *goods, products or services*."

Once again, a fair reading of EXIST'S underlying FEDERAL LAWSUIT clearly indicates that the Plaintiffs herein use of EXIST's protected marks and "Shield Marks" in connection with the advertising and marketing of their products was not only an infringement, but also constituted unfair competition and created confusion among their customers as to the origin of the offending goods and diluted the good will, reputation and value of their protected marks as well as disparaged their products and marks.

EXIST sought both monetary damages as well as injunctive relief in their underlying

FEDERAL LAWSUIT. Clearly, these allegations fall within the coverage provisions of the Policy even though the terms "slander," "libel" and "disparage" are not defined in the Policy.

In analyzing policy provisions, the terms of the contract must be given their everyday meaning and be read in light of the skill and experience of an ordinary person. *Lindheimer*, 643 So. 2d 636 (Fla. 3d DCA 1994). In *Hyman v. Nationwide Mutual Fire Insurance Co.,* 304 F. 3d 1179 at 1990 (11th Cir. 2002), the Court stated the well-established principle of insurance policy construction under Florida law:

> [S]tart with the basic premise that terms of an insurance contract must be given their plain, ordinary and generally accepted meanings viewed from the perspective of the average person, with insuring language given its broadest possible sweep and exclusionary language the narrowest possible reach.

Therefore, in determining the meaning of the aforementioned terms, this Court should give such terms their plain and everyday meaning. *Id*. Several courts have recognized the definition of "disparage" as meaning to lower in rank or reputation, and /or to depreciate by indirect means. *See St. Paul Guardian Ins. Co v. Recognition Internat'l, Inc.*, 2001 U.S. Dist. LEXIS 1085 (N.D. Tex. 2001); *Logan v. San Francisco Fed. Sav. & Loan Assoc*, 1998 U.S. Dist. LEXIS 10517 (N.D. Cal. 1998); *State Farm Fire & Cas. Co. v. Martinez*, 26 Kan. App. 2d 869, 875 (Kan. App. 2000).

Once again, we must bear in mind that SCOTTSDALE INSURANCE was required to defend EXIST'S underlying FEDERAL LAWSUIT if the allegations raised any doubt as to the duty to defend. *Bear Wolf, Inc.*, 819 So. 2d at 820. Here there is no doubt. Clearly, "dilution" and/or "irreparable injury" to the "goodwill and *reputation*" of EXIST come within the definition of "disparage" which is "to lower in rank or *reputation*."

Since the allegations of EXIST'S underlying FEDERAL LAWSUIT clearly allege disparagement to EXIST'S goods and services, SCOTTSDALE INSURANCE was required to

defend and indemnify. Therefore, the Plaintiffs herein are entitled to seek recovery of the costs of defending the underlying suit. *See Cont'l Cas. Co.*, 807 So. 2d at 93.

> D. **SCOTTSDALE INSURANCE has a duty to defend and indemnify under the definition of "advertising and personal injury" contained in Section 14.g of the Policy.**

In *Poof Toy Prods, Inc. v. U.S. Fidelity & Guaranty Co.,* 891 F. Supp. 1228, 1235-36 (E.D. Mich. 1995), a case concerning trademark and trade dress infringement, the court held that although the complaint did not on its face appear to allege any advertising activities, the complaint was "replete with the term 'marketing.'" The court concluded that the term "marketing" includes advertising activities. *Id.* The court also recognized that "allegations of trademark and trade dress infringement inherently involve advertising activity." *Id.; see also, Winklevoss Consultants, Inc. v. Fed Ins. Co.,* 991 F. Supp. 1024, 1036 (N.D. Ill. 1998) (citing several cases reaching the same result); *Finger Furn. Co., Inc.,* 2002 WL 32113755 (recognizing that distinguishing between marketing and advertising is not reasonable and that "one of the basic functions of a trademark is to *advertise* the product or services of the registrant"). Specifically, the court stated:

> [T]here can be no trademark/trade dress infringement without advertising having occurred. This conclusion results from a required element in every trademark/trade dress case, that the mark or dress is likely to cause confusion to the consumer or deceive the consumer as to the origin or manufacturer of the goods. To have (or potentially cause) this effect, one must clearly advertise (announce to the intended customers) the mark or dress.

*Id.* at 1236.

Here, like in *Poof Toy,* EXIST'S underlying FEDERAL LAWSUIT specifically refers to marketing, promoting, displaying, selling and also alleges trademark and/or trade dress infringement. EXIST'S underlying FEDERAL LAWSUIT goes well beyond that deemed

sufficient in *Poof Toy* by specifically requesting that "advertising" by the Plaintiffs herein be enjoined.

The allegations of EXIST'S underlying FEDERAL LAWSUIT trigger coverage under the definition of "advertising and personal injury" contained in Section 14.g of the Policy- "infringing upon another's copyright, trade dress or slogan in your 'advertisement'." While the EXIST'S underlying FEDERAL LAWSUIT does not use the term "trade dress", it does allege an action for "Federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)." As noted by the 11th Circuit in *Hyman v. Nationwide Mutual Fire Insurance Co.,* 304 F. 3d 1179 (11th Cir. 2002), violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) creates a federal cause of action for trade dress infringement.

In the context of infringement there is "probably no substantive difference between" trademark and trade dress. *El-Com Hardware, Inc., v. Fireman's Fund Ins.,* 92 Cal App. 4th 205, 214 (Cal. 1st App. Dist. 2001); *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.,* 781 F. 2d 604, 608 (7th Cir. 1985); *Aloha Pacific, Inc. v. Cal. Ins. Guar. Assoc.,* 79 Cal. App. 4th 292, 321 (Cal. App. 2d 2000). Regardless of the label placed on a cause of action brought under §43(a), the central concern is "whether the public is likely to be confused as to the manufacturer, attributes, or origin of the product." *Hyman,* 304 F. 3d at 1187, n.6. In *Hyman,* the plaintiff sought indemnity for a judgment rendered against it for unfair competition in violation of § 43(a) of the Lanham Act. 304 F. 3d at 1186. The Eleventh Circuit, applying Florida law, stated:

> We note that, because it is based on Double R's use of model numbers confusingly similar to Inter-Global's distinctive model numbers to designate its products, the Lanham Act claim fairly could be described as either "trade dress infringement" or "false designation of origin." *Id at* 1186, n.6.

Similarly, in the present case, EXIST'S underlying FEDERAL LAWSUIT alleges that the Plaintiffs herein infringement of EXIST'S protected marks and "Shield Marks" caused confusion as to source or sponsorship" thus constituting unfair competition under § 43(a).

Following *Hyman,* the Lanham Act claim fairly could be described as trade dress infringement. Therefore, SCOTTSDALE INSURANCE was obligated to defend and indemnify. See, *Lime Tree,* 980 F. 2d at 1405; *Bear Wolf, Inc.,* 819 So. 2d at 820.

### E. *SCOTTSDALE INSURANCE has a duty to defend and indemnify under the definition of "advertising and personal injury" contained in Section 14.f of the Policy.*

The allegations of EXIST'S underlying FEDERAL LAWSUIT also trigger coverage under subsection 14.f of the Policy "the use of another's advertising idea in your 'advertisement." Once again, SCOTTSDALE INSURANCE dismisses the notion and does not even address the possibility that coverage could also be implicated under subparagraph f. that provides coverage if the Plaintiffs' "advertisement" constituted a "use of another's advertising idea" in its "advertisement".

As recognized in *Hyman,* an "advertising idea" is "any idea or concept related to the promotion of a product to the public." 304 F. 3d at 1188. A product's trade dress and/or trademark, including the packaging or labeling of goods and marketing techniques, can constitute an "advertising idea." *Id.* at 1189 (quoting *Adolfo House,* 165 F. Supp. 2d at 1339, for the proposition that "[O]ne reasonable interpretation of 'advertising ideas' and 'style of doing business' concepts...is that they encompass the physical appearance of a product-the ornamental features that distinguish it from similar products and identify its source.

Because trademark and trade dress serve this function, the concept of advertising idea or 'style of doing business' may reasonably be interpreted to include these types of claims. The

crux of EXIST'S underlying FEDERAL LAWSUIT was that the Plaintiffs' herein use of the EXIST'S protected marks and "Shield Marks" together with their use of the hang tags incorporating these protected marks was causing confusion to EXIST'S customers.

Clearly SCOTTSDALE INSURANCE had a duty and an obligation to defend and indemnify under this provision, thus triggering coverage. *Bear Wolf, Inc.,* 819 So. 2dat 820; *Lime Tree Village,* 980 F. 2d at 1405 (11th Cir. 1993).

F. **The exclusions in the Policy are inapplicable.**

At the outset it must be noted that Exclusions in insurance policies are narrowly construed and are construed even more strictly against the insurer than coverage clauses. *Hyman,* 304 F. 3d at 1190; *State Comprehensive Health Ass'n v. Carmichael,* 706 So. 2d 319, 320 (Fla. 4th DCA1997).

With this in mind, SCOTTSDALE INSURANCE takes the position that assuming that this Court determined that coverage under the Policy was triggered and it had a duty to defend and indemnify the Plaintiffs herein under the coverage provisions of the Policy, that such coverage was then excluded under two different exclusions in the Policy.

The first exclusion that the Defendant argues is applicable is the "Infringement of Copyright, Patent, Trademark or Trade Secret" which provides that this insurance does not apply to:

> i. Infringement of Copyright, Patent, Trademark or Trade Secret
>
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".
>
> *However, this exclusion does not apply to infringement in your "advertisement", of copyright, trade dress or slogan.*

Thus, the exclusion is only applicable to the improper use of the copyright or trademark itself in connection with the infringing products themselves. When the infringement occurs in connection with the advertising, the exclusion is not applicable.

A review of EXIST'S underlying FEDERAL LAWSUIT clearly reveals that both type of injuries are alleged: i.e. injury and damage from the improper use of the protected marks as well as in advertising and marketing. As such this exclusion is inapplicable.

The second exclusion that the Defendant argues is applicable is the "Knowing Violation of Rights of Another which provides that this insurance does not apply to:

> a. Knowing Violation of Rights of Another
>
> "Personal and Advertising injury" caused by or at the direction of the insured *with the knowledge that the act would violate the rights of another **and** would inflict "personal and advertising injury."*

Pursuant to the terms of the above exclusion, this provision will only apply to exclude coverage where a "personal and advertising injury," as defined above, was caused by or at the direction of the insured: (1) with knowledge that the act would violate the rights of another; **and** (2) with knowledge that the act would inflict "personal and advertising injury."

A review of the allegations contained in EXIST'S underlying FEDERAL LAWSUIT clearly reveals that EXIST does not allege the elements necessary to trigger this exclusion. At most, what EXIST alleges in general and conclusory terms is that the Plaintiffs violation and use of EXIST'S protected marks was "intentional", but not that the Plaintiffs' herein did this intentionally to cause "personal and advertising injury." As such the exclusion is inapplicable.

The duty to defend turns on the "grounds for liability" expressed by the "allegations of fact" in the underlying complaint. *Lime Tree,* 980 F. 2d at 1405. In *Lime Tree,* the court held that an exclusion for intentional acts was not applicable despite allegations throughout the complaint

that the insured acted intentionally and where every count incorporated by reference the allegedly intentional acts. 980 F. 2d at 1405 (applying Florida law). The court concluded that despite the allegations of intentional conduct, the insured could also be held liable for unintentional conduct under the allegations of the complaint. *Id.* Because the factual allegations provided a potential basis for coverage, the insurer was required to defend. *Id.* at 1406.

## CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment should be denied and Plaintiffs' Cross Motion for Summary Judgment should be granted as to both SCOTTSDALE INSURANCE COMPANY'S duty to defend and indemnify the Plaintiffs herein.

WHEREFORE, the Plaintiff respectfully requests this Honorable Court enter

1. an Order denying the Defendant's Motion for Summary Judgment;

2. an Order granting Plaintiffs' Motion for Summary Judgment finding that the Defendant owed the Plaintiffs a duty to defend and indemnify the Plaintiffs in the EXIST underlying FEDERAL LAWSUIT;

3. in the alternative, enter an Order granting in part and denying in part Plaintiffs Motion for Summary Judgment, finding that the Defendant had a Duty to Defend but no Duty to indemnity, and

4. any other relief deemed just and proper.

Respectfully Submitted,

SHAKED LAW FIRM, P.A.

  /s/ Sagi Shaked
Sagi Shaked, Esq.
Florida Bar No.: 0195863
19950 West Country Club Drive, Suite 100
Miami, FL 33180
Telephone No.: (305) 937-0191

>Facsimile No.: (305) 937-0193
>Primary Email: filingcourtdocuments@gmail.com
>Secondary Email: shakedeservice@gmail.com
>Attorney for Plaintiffs, ESY INC & YARIV SHAKED

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on September 2, 2015 a copy of the foregoing was filed using the Court's CM/ECF system, which will send a copy of the foregoing to the following receipts:

>Kathy J. Maus, Esq. and Julius F. Parker, Esq.
>Butler Pappas Weihmuller Katz Craig, LLP
>3600 Maclay Blvd., Suite 101
>Tallahassee, FL 32312
>Telephone No.: (850) 894-4111
>Facsimile No.: (850) 894-4999
>Attorneys for Defendant, Scottsdale Insurance Company

>SHAKED LAW FIRM, P.A.
>
>   /s/ Sagi Shaked
>Sagi Shaked, Esq.
>Florida Bar No.: 0195863
>19950 West Country Club Drive, Suite 100
>Miami, FL 33180